for the test. Go forward, Mr. Shardlow. Your Honors, there's one overwhelming issue in this case that I think may, in fact, even resolve all of the minor issues, and that is the extent to which the judgment awarded in this case can be characterized as equitable restitution under ERISA. We have one recent Supreme Court case and a very recent Ninth Circuit Court of Appeals case that I believe make it completely clear that a money judgment for a specified sum where no identifiable funds of money exist does not constitute equitable restitution. The Supreme Court case is Great Western v. Knutson, and interpreting that case recently, the Ninth Circuit in Honolulu Joint Apprenticeship v. Foster very clearly described the differential between equitable restitution and legal restitution. I want to start with legal restitution because it points out the fact that we don't even have the grounds, the grounds for legal restitution in this case. In cases in which the plaintiff could, and I'm reading now from Honolulu Joint Apprenticeship v. Foster, in cases in which the plaintiff could not assert title or right to possession of a particular property, but in which, nevertheless, he might be able to show grounds for recovering money to pay for some benefit the defendant had received from him, and that's the magic words, the plaintiff had a right to restitution at law. Now, we have investment losses in the plan other than a $12,000 amount, a fairly minor amount involved that we'll discuss. Everything here constitutes the amount by which stock owned by a retirement plan decreased in value. There was no benefit that even arguably the defendants gained by that investment loss. And so the only thing that Section 1109 provides, it also provides that if there's a loss resulting from a breach of fiduciary duty, the fiduciary is personally liable to make good to such plan any losses. Now, isn't that the subdivision that we're talking about here? No, because the Court here was did not purport to calculate losses, did not calculate losses, did not have information from which you could even begin to calculate the losses. So didn't the Court equate the diminution in value of the fund to a loss? It didn't. I mean, that's pretty straightforward. It did not. It said specifically that legal damages were not permitted, that it was ordering equitable relief and ordered, quote, restitution equal to the difference between the value of the assets on the first day of a particular plan year and the last day of that same plan year. And that's why it's not a loss. I mean, by the way the district court was approaching it, that was a loss in value of the plan, right? Well, it was certainly a decrease in value. But if you acquire a stock and the stock goes up in value and then goes down somewhat, arbitrarily picking two periods of time and saying it depreciated between those two periods of time is certainly not an appropriate measure of legal damages. And you may disagree with the way the loss was calculated, but it's a loss anyway. Well, certainly the district court did not purport to value losses or to award losses. It referred to a ---- It used the word restitution. But as Judge Nelson points out, this action covers more than restitution, and maybe the district court used the wrong concept, but it's pretty clear what the blue on the board, what it had in mind when it says, look, beginning of the period, the stock was worth this much. They should have exercised better care, and if they hadn't done that, the loss wouldn't have been, during the period, wouldn't have been as great as it was. And it found what the loss was. Well, to the extent that the court views the judgment here as an award of damages, then it clearly violates the restatement of trust. It clearly, in fact, violates the common notion of what constitutes a loss, because if you acquire a piece of property and that property goes up in value ---- Where did the money in the plan at the end come from? I mean, it was money. It wasn't trucks or scales or anything else. It was money, wasn't it, that was turned over? The money that was turned over, part of the ---- in fact, a substantial portion of the trust fund was liquidated in order to turn over about 800, I think $800,000 or $900,000 in cash, something like that, to the district court, who then subsequently in a different action had it turned over to the plaintiff or the appellee. So your example about picking a point in the cycle of a stock's value isn't particularly appropriate where the stock has been sold. We know it was sold. Well, first of all, if the judge had used the price at which it had been sold, which he did not, if he had used that, I would agree that that's a proper ending measure of damages. He just picked the end of a particular plain year. Even though at the time of the summary judgment in which the stock had been sold for quite some time, the judge did not use the closing price or the price at which the stock had been sold. He just looked at a 12-month period that the plaintiffs had provided him information on, and he used that. But the real problem is not so much the difference between the value at the end of that plain year and the value at which it's sold, although there is a differential, but the beginning, the starting point was not either when the stock had originally been acquired or the point in time in which it might have become improper to hold that stock as a result of a problem with the diversification of the stock. The problem was not with the diversification of the fund. There simply wasn't any attempt to find out or to determine to what extent the trust fund had, in fact, been harmed by the acquisition of that security. We also have a problem here about the diversification and the proof involving diversification itself. But I want to make sure that I finish the questions about the potential damage issues. Okay. She dies 3 days or 28 days before the end of the planned year. I think that's approximately. Certainly, it was somewhere around the beginning of the planned year. Right. So up to that point, she was probably on the board of the committee. She was on the committee, Your Honor, and it's demonstrated that she was. And then after she dies, then her interest goes to somebody else. So they may have had a duty to her, but she had that duty to herself, which all those duties ended when she died. Would that be right? Well, certainly, she doesn't have any obligation extending beyond her death. That's certainly true. But if we have a diversification. But don't you have to look at the person standing in front of the court and say, when did this committee's obligation to this person start? This person is standing in front of the court. And it had to start no earlier than her death. If we are talking about a breach of fiduciary duty to a participant and not the plan as a whole, the case law, Vary v. Howe in particular, and also Great West v. Knutson, makes it clear that under 1132a, the only relief is under 1132a3. And there you don't have a damages award at all. So since this clearly cannot be justified as an equitable award and it cannot be justified as a damage award, if we are talking about a breach to the participant's beneficiary as opposed to the plan. These people were on this committee for years and years and knew nothing about what they were supposed to do, knew nothing about what the committee was supposed to do, didn't know what the plan did, didn't know what the assets were. And the Court picked the day, which was 28 days after she dies and after her interest gets transferred to somebody, as a place to say, this is where we're going to start deciding how much your defaults cost people. Now, what's wrong with that? You've got to start someplace. Well, cost people, you mean cost the plan? The plan. The plan is people. People are in the plan. You have to start someplace, but why start at that point? Why not? If you're talking about the damages to the plan, her death has no effect on whether the plan acquired that stock at. The reason why not is very simple, because the stock What did you propose as the starting date? You're in there defending these people against some pretty serious charges that they didn't know from nothing. Okay. So did you propose the starting date? Well, I did not represent them in the trial court. Well, somebody. Okay. I have proposed a starting date in my briefs, and the starting date is set. Let's talk about what was proposed in district court. What you proposed in your brief is a little too late. What was proposed to the district court as the place to start the analysis? There was a summary judgment motion that asked for equitable relief. Okay. What was pointed out to the district court judge was that equitable relief, that the relief being sought was not equitable relief. Since there was no attempt made to demonstrate on summary judgment what losses had been incurred by the plan, the defendants did not they did not provide an alternative measure of damages, because in summary judgment, they weren't able they weren't required to demonstrate what the proper measure of damages might be if this matter went forward and went to trial, simply that no damages have been requested and no damages have been shown. In fact, you didn't even appeal the issue of improper calculation of damages. You appealed on the theory of this is not proper remedy under ERISA. Well. I didn't see in your brief. Oh, yeah. There's an extensive portion of my brief that discusses that this should not be recharacterized as damages. Oh. That's fine. That's your argument. Yeah. But I didn't see an issue on appeal that the district court miscalculated. But the amount is wrong. Your issue is it's not allowed to be overrated. You mean in the certificate of appeal? I mean, in the issues that you briefed. In the issues that I briefed, the miscalculation of damages, it was extensively briefed. Well, there's a couple of things, the $12,000, the interest rate. No, no, no, not those. The ---- Okay. Well, maybe I didn't read it. Okay. I was asleep when I read this brief. Well, I'm not saying that I necessarily made it as clear as I should have possibly. We've got the citations of the proper measure of damages in the restatement. Here, the district court award cannot be upheld as legal remedy. Page 19. It cannot be upheld as a legal remedy for losses to the plan resulting from each such brief. And we'll go through all the various ways that the district court improperly calculated damages if we want to try to recharacterize this as a calculation of damages. It goes on, page 23, is the citation to the restatement. All the argument about both the closing date being the wrong date and the opening date being the wrong date, I think I go to page 27. So I've got eight pages of the brief that discuss that issue. Maybe not well. But certainly we were ---- They have misunderstood your point. Yeah. The, the, you know, and I think that there's a real question of fairness when somebody brings a summary judgment motion, says, I want the judge to issue the following equitable relief. It's pointed out to the court that, that it's not equitable relief that they're asking for and it can't be granted, and then to, to later say, well, yeah, but the district court judge can take on summary judgment and, and offer whatever relief that it might think is warranted. After a trial, there's no question that they can do that. Okay. But, but regardless, you know, I didn't, I, my main point is not that, that it was unfair on summary judgment to, to be awarding damages when no damages had been requested, but rather that the information simply wasn't before the district court from which the district court could properly calculate damages to the plan. And if we're talking about damages to the beneficiary, I think the law is absolutely clear that there are no damages that can be awarded for a breach of fiduciary duty to a beneficiary. If we're talking about the breach of duty to the plan, we have to look at the point in time, the value of the stock at the point in time that, that it should have been sold or, or not acquired if the breach resulted originally from the, from the acquisition of the, of the stock to begin with. I do want to address, at least quickly, the issue of, of the lack of any proof of, of, of a diversification violation. And we have, we have really two classes of assets that were involved here. One was a fund called Diversified Investment Portfolio. There was simply no evidence before the district court of any nature whatsoever that could be argued to suggest that there was anything wrong with that Diversified Investment Portfolio. With respect to the Unum stock, there was one item of information and one item of information only, and that was the percentage of the investment in that stock of 55 percent. Now, the case law suggests that something more than a, a mere percentage figure is necessary to demonstrate a lack of diversification. Admittedly, 55 percent is a high percent, but on summary judgment, the Supreme the, the court should have looked and required something more than the mere percentage before finding a substantive violation of the diversification requirements. Roberts. Okay. You've got about three and a half minutes left. I will reserve it if I may. Okay. Thank you. From Appellee. Good morning, Your Honors. Gary Noah on behalf of Respondents. In answer to the question about valuation dates raised by the court, under ERISA, plans are valued once a year on the last day of each plan year. The court had no present ability, nor does any court looking at this plan, unless we do a micro audit. To use anything other than the planned year-end values as provided by, ironically, the fiduciaries. As the court noted, these fiduciaries go well beyond the hear no evil, see no evil, speak no evil, to the hear nothing, know nothing, see nothing. Therefore, the only thing we had available were the documents prepared in conformance with the risks by the third party administrator, giving us the planned year-end values. That's all the court had. And thus, the defendants cannot now complain to this court, having not raised anything of an issue concerning valuation in the lower court, that the use of the mandated planned year-end values was inappropriate. Because that's all the court had before them. The defendants had no clue as to what the value of the assets were at any time. Nor did they, even today, have any clue as to what the assets were. At this late stage, on appeal, having conceded all of the facts without substantial dispute before the court at the time of summary judgment, they now claim that this fund, whatever it was, provided diversification. It's a red herring. And it's a red herring because the truth of the matter is 93 percent of this fund's value were in two assets, stock and a mutual fund. Nobody knew about the stock, nobody knew about the mutual fund. During the period of May 31, 1999, through May 31, 2000, we were in the greatest bull run in the markets ever seen. And yet, they had two assets besides cash. And they managed to pick the two losing stocks in the entire stock universe. The problem with the entire presentation on behalf of the defendants is that they take the Great Western case, which dealt with a subrogation cause within a plan, and they try to extrapolate that into a position that says, in essence, the Supreme Court in the Great Westlife v. Newsom case declared unconstitutional. And when you look at the court's presentation, Section 1109A, they concentrate on we didn't make a profit, therefore we can never be ordered to restore. But as the Court pointed out, the first step is, if there are losses as a result of the breach, and they don't deny the losses, the matter of quantification perhaps, but they don't deny the losses, they must be made to restore. That's the statutory requirement. Initially, when we were to look at the complaint, it would be seen that we brought an action on behalf of a single beneficiary. The belief at the time was that, having gone through two State court actions in the State Court of Appeal, they were just holding money back. When we got into discovery, we found out they tanked the entire plan. Therefore, the summary judgment sought and got one restoration to the plan of its losses based on the planned year-end valuations, which anybody had, plaintiff, defendant, or court. And two, once the plan had been made whole, then and only then would the beneficiary get the balance due to them. I agree with Mr. Shardlow. I, as an individual beneficiary, cannot bring a fiduciary duty action, a breach of fiduciary duty action to enforce my own rights. However, I can on behalf of the entire plan, and that's what we did. Gentlemen and ladies, Your Honors, I just the what? I really think I don't have anything further. I mean, the breaches are so clear as to be indisputable. The law makes the mandatory point of valuation, and we did restore to the entire plan before we got it done. Thank you. Mr. Shardlow, you have about three and a half minutes left. I will take that one, Your Honor. First of all, we don't have any problem with the use of the plan, the plan year-end values, although since the Court did have on an ending point the sale of the assets, I don't know of any reason why it would not have used that as an appropriate ending point. The problem was, is not that the Court used plan year-end values, but that the only plan years, and it was provided on the summary judgment motion, was May 31st, 99 and May 31st, 2000. Simply that 12-month period, no attempt whatsoever was made to identify the points at time at which any of the assets in question were acquired, what the original purchase price was. There simply was no effort whatsoever to demonstrate what loss the plan had suffered as a result of its investments in these assets. And that's an entirely different matter than saying that the only information that was available was available at the end of the year. If the Court had ascertained that the stock had been purchased at the end of the middle of 1990 and used the May 31st, 1990 value as a starting point for the plan's acquisition price, and there had been no ability to demonstrate what the actual acquisition price is, I wouldn't have a problem with that. I mean, the courts don't always have to measure damages with absolute precision. Here, there was simply no effort to determine damages at all, nor did the district court say that he was attempting to determine damages. Finally, since that evidence was in the record, there was no evidence in the record of the acquisition price of any of these assets or, in fact, whether the stock was worth as when sold was worth less than when it was acquired, and what a reasonable rate of return would have been in the interim. I don't think that it's accurate to say that we don't deny that the plan was damaged. In fact, I believe that the plan was not damaged, that the acquisition price of the stock, even with the – even adjusting it for a reasonable rate of return, was significantly below what it was sold for. It simply had gone down as compared to 12 months before, but not compared to what the plan acquired it at. Thank you. The case is now used and submitted. We are adjourned.
judges: Kozinski, Tg Nelson, Restani